Filed 3/26/26  P. v. Palaminos CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ANTONIO PRECIADO PALAMINOS,<br><br>　　　Defendant and Appellant. | F089583<br><br>(Super. Ct. No. MCR025574)<br><br>**OPINION** |

-oo0oo-

## THE COURT*

APPEAL from an order of the Superior Court of Madera County.  Dale J. Blea, Judge.

Francine R. Tone, under appointment by the Court of Appeal, and Antonio Preciado Palaminos, in propria persona, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-oo0oo-

---

\*　　Before Levy, Acting P. J., Detjen, J. and Harrell, J.

# INTRODUCTION

On July 3, 2006, appellant and defendant Antonio Preciado Palaminos (defendant) killed a family of five people. He was driving a truck and trailer rig which he had just stolen, went through a stop sign, hit their vehicle, and fled the scene.

In 2007, defendant was convicted after a bench trial of five counts of second degree murder, five counts of gross vehicular manslaughter while intoxicated with special allegations for leaving the scene, two counts of vehicle theft, hit and run, driving without a license, and other offenses. In 2008, defendant was sentenced to four years plus 75 years to life. The judgment was affirmed on appeal. (*People v. Palaminos* (Apr. 30, 2009, F054625) (*Palaminos I*).)[1]

Defendant has filed two prior petitions for resentencing pursuant to the amendments enacted by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) and, later, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775). The trial court denied both petitions because he was convicted as the actual killer, and this court affirmed those rulings on appeal. (*People v. Palaminos* (Mar. 5, 2021, F080169) (*Palaminos II*); *People v. Palaminos* (Feb. 21, 2023, F084305) (*Palaminos III*).)

In this case, defendant filed his third petition for resentencing under Penal Code[2] section 1172.6, again asserted he was eligible for resentencing, and restated the same grounds as in his previous petitions. The trial court denied the petition for failing to state a prima facie case since he was convicted as the actual killer.

---

[1]    On April 9, 2025, this court granted the request filed by the Clerk of the Madera County Superior Court, in order to avoid duplication of the records, to take judicial notice of the records in defendant's prior appeals in case Nos. F054625, F080169, F082006, F082730, F083791, F084305, and F086744.

[2]    All further statutory citations are to the Penal Code unless otherwise indicated.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and *People v. Wende* (1979) 25 Cal.3d 436. In response to this court's *Delgadillo* order, defendant filed the same lengthy letter brief that he previously filed with this court in the *Wende* appeal from the denial of his first petition for resentencing, with two additional pages.

We address defendant's new contentions and affirm the trial court's order.

## FACTS[3]

On July 3, 2006, defendant stole a heavy-duty Chevrolet pickup truck attached to a fifth-wheel trailer, with a bulldozer lashed to the trailer (together, the rig). The rig had been parked in front of a house on Road 29 in Madera, and the keys were left inside the truck. Defendant, who did not have a driver's license, drove the rig away from the house.

The driver of an oncoming vehicle on Road 29 saw the stolen rig traveling toward him in the wrong lane at a " 'pretty fast pace.' " The driver of the second vehicle had to go off the road to avoid being hit head-on. The rig stayed in the opposing lane and did not swerve or brake. As the rig went past him, the driver of the second vehicle saw defendant behind the wheel, and testified defendant's eyes were open wide and he looked scared.

---

[3]    The following facts are from this court's nonpublished opinion in *Palaminos I*, where this court affirmed the judgment after trial. In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292 (*Clements*); *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)

We recite a partial factual summary from the trial record to place defendant's arguments herein in context, and do not rely on it to resolve this appeal from the trial court's order that found his third petition did not state a prima facie case for relief.

At approximately 1:00 p.m., defendant was still traveling on Road 29, and he drove the rig at a high rate of speed through the stop sign at Avenue 12. The rig collided with a Toyota, and pushed the Toyota into the road's bridge rail. The stolen truck ran into the bridge rail, and the attached trailer with the bulldozer jackknifed and hit the Toyota a second time. The Toyota was crushed into the rail and caught fire.

The occupants of the Toyota were a family of five people: three minor children and their parents. The children and their father burned to death in the car. The mother survived the collision, and bystanders pulled her away from the wreckage. She had been driving the Toyota, and told a paramedic that the truck "cut in front of her," hit the Toyota, the car caught fire and everyone was still inside, and the truck's driver " 'took off running.' " The mother suffered grievous burns and subsequently died from her injuries.

Immediately after the crash, a witness saw defendant run away from the scene. The witness told defendant that he should go back to the accident. Defendant got angry and asked the witness "who he was and why he (defendant) had to answer to him." Defendant took off his shirt and cleaned blood off his arms and shoulders. Defendant ran away, flagged down a pickup truck, got a ride, and left.

Defendant was apprehended at approximately 6:20 p.m. the same day, as he was attempting to steal a van. Defendant was sweating, appeared nervous, and smelled strongly of alcohol. He slurred his speech and his eyes were red and glassy. He had bruises and abrasions on his body consistent with being in a vehicle crash, and was taken to the hospital. He told a nurse that " 'he had four tall beers, the 40 ounces, and that he had used meth that morning.' " His blood was drawn at 9:17 p.m. and "contained 0.14 percent alcohol and 100 nanograms methamphetamine per milliliter." The prosecution introduced evidence that at 1:00 p.m., defendant's blood-alcohol level "would have been between 0.14 and 0.31" percent, and his blood would have contained about 200 nanograms methamphetamine per millimeter.

4.

"A few months before the [fatal] collision, on May 11, 2006, at about 11:10 p.m., an officer stopped defendant after witnessing him back a van into the wrong lane of traffic. The officer observed that defendant had a strong odor of alcohol, slurred speech and red, watery eyes. Furthermore, defendant did not have a license. He said he had consumed two beers at about 6:30 that evening. The officer arrested defendant for driving under the influence and took him to jail."

At trial, defendant testified he drank three beers on the morning of the fatal crash. He claimed he took the truck and trailer because he was being followed by four gang members. He tried to brake before the collision but the brakes did not work. After the collision, he ran to where he saw a friend, who drove him to a store and gave him money to buy beer. Defendant bought two beers and began to drink them, and claimed he saw the same four gang members. He went into a van to hide and tried to start it.

In rebuttal, an officer testified that when he interviewed defendant after his arrest, defendant first claimed that a friend named Jose had been driving the stolen truck. Then defendant admitted crashing the truck. He admitted he was drunk at the time of the crash and said he did stupid things when he was drunk. "He said he drank four 16-ounce beers the morning of the collision. He said he got in the truck and adjusted the radio to his favorite station. Prior to the collision, he was traveling approximately 65 miles per hour. He did not mention being chased by anyone. He said he braked late going into the curve. After the collision, he was afraid of the fire and feared the truck would explode." (*Palaminos I*, *supra*, F054625.)

## PROCEDURAL BACKGROUND

On January 22, 2007, the information was filed that alleged defendant committed the following offenses on July 3, 2006:

Counts 1–5: murder of the five victims in the Toyota (§ 187, subd. (a));

5.

Counts 6–10:  gross vehicular manslaughter while intoxicated of the same five victims (§ 191.5, subd. (a)), with special allegations that he fled the scene after committing the offenses (Veh. Code, § 20001, subd. (c));

Count 11:  hit and run, that he was the driver of a vehicle involved in an accident resulting in death or great bodily injury to persons other than himself, and fled the scene (Veh. Code, § 20001, subd. (a));

Counts 12 and 13:  unlawfully taking or driving a vehicle, respectively, the pickup truck and the trailer (Veh. Code, § 10851, subd. (a));

Count 14:  attempting to unlawfully take or drive a vehicle, the van (§ 664; Veh. Code, § 10851, subd. (a));

Count 15:  grand theft of the John Deere "crawler" (the bulldozer) strapped to the trailer (§ 487, subd. (a)); and

Count 16: misdemeanor driving without a license (Veh. Code, § 12500, subd. (a)).

**Bench Trial and Convictions**

On April 11, 2007, defendant waived a jury trial and requested a bench trial.

On December 4, 2007, defendant's bench trial began on the charges and special allegations.  On December 12, 2007, the prosecution rested and the court denied defendant's motion for acquittal.

On December 14, 2007, the trial court returned the verdicts, found defendant guilty of all charges and the special allegations were true, and made lengthy findings.

As to the five counts of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), the trial court stated:  "There's no question in my mind that [defendant] was under the influence.  There's no question in my mind that his actions involved gross negligence in operating a motor vehicle, and that he violated the Vehicle Code [s]ection by running the stop sign and causing the deaths of those [victims]."

The trial court found defendant guilty of five counts of second degree murder based on implied malice.  In doing so, the court acknowledged the prosecutor's closing

6.

argument, that the murder charges in this case were not solely based on implied malice under *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*). The court agreed with the prosecutor's argument that "irrespectively [of] whether or not [defendant] was driving under the influence, his acts are such that they involve a conscious disregard for life irrespective of those things. It's not that much different than somebody who was fleeing the scene of a crime. It's not that much different than somebody that's involved in a speed contest where they consciously disregard it."[4]

> "In this case we have to look at all of the circumstances. Number [one], [defendant] consumed drugs and was under the influence of drugs, even though we don't know if it was such as to impare [*sic*] his ability to operate a motor vehicle. But he consciously took drugs and consciously drove a vehicle knowing that there may be consequences.

> "He consumed alcoholic beverages. The evidence is such that he consumed them to a level that he was under the influence. And from the testimony he was grossly under the influence of alcohol. He took a conscious effort to steal a vehicle, to break into somebody's car. To not only take a vehicle that was stolen but had a tractor and trailer on it. He did this when not only did he [not] have a license, he wasn't even licensed to operate those kind of vehicles, which is a conscious disregard for human life. He drove those vehicles, after he stole them, at a high rate of speed, exceeding the speed limit, nearly killing another person and driving them off the road. Even if his story is true, which I seriously doubt that he was being chased by gang members, he had reached a point of where he would not—he was away. He didn't have to continue to drive at a high rate of speed. He had basically escaped them, but he continued to drive at a high rate of speed after he had almost killed another person or ran them off the road. To drive [at] a high rate of speed [he] came to an intersection, not even stopping at [a] high rate of speed. Possibly attempting to stop when he should have or could have been aware of the fact that he was not going

---

[4] *Watson* held that implied malice can be inferred for second degree murder, in an appropriate case, when the defendant killed someone while driving while intoxicated. (*Watson*, *supra*, 30 Cal.3d at pp. 300–301.) Since *Watson*, "our courts have recognized that there is no particular formula for analysis of vehicular homicide cases, instead requiring a case-by-case approach." (*People v. Superior Court (Costa)* (2010) 183 Cal.App.4th 690, 698.)

7.

to be able to stop. Not even knowing how to operate the vehicle, you know.

"Not knowing what it would even take to stop is another part of the evidence of a conscious disregard for life, and he deliberately performed all of these acts, and yet there's no question in my mind that he had to know that his conduct endangers the life of another and then he completely goes through the stop sign at a high rate of speed and causes an accident, and as a result of that five people die."

## Sentencing

On January 15, 2008, the trial court sentenced appellant to four years plus 75 years to life, based on the midterm of three years for count 11, hit and run (Veh. Code, § 20001, subd. (a)); and consecutive terms of eight months (one-third the midterm) for count 12, vehicle theft (Veh. Code, § 10851, subd. (a)); and four months (one-third the midterm) for count 14, attempted vehicle theft (§§ 664; Veh. Code, 10851, subd. (a)); plus five consecutive terms of 15 years to life for each of counts 1 through 5, second degree murder (§ 187, subd. (a)). The court either imposed concurrent sentences or stayed the sentences imposed for the remaining convictions and special allegations.

## Direct Appeal

In 2009, we affirmed the judgment on direct appeal and held defendant's convictions for gross vehicular manslaughter while intoxicated were supported by substantial evidence and the trial court correctly denied defendant's motion for acquittal. (*Palaminos I*, *supra*, F054625.)

"Here, the prosecution presented in its case-in-chief evidence of defendant's erratic driving immediately before the collision. Defendant drove over the speed limit, swerved all over the road, nearly drove off the side of the road, almost hit a truck head-on, and failed to break in time to stop for a stop sign. This evidence supported a reasonable inference that defendant was impaired when he was driving. In addition, the nurse's testimony that defendant told her he drank four beers and ingested methamphetamine that morning provided additional support for the inference that he was intoxicated." (*Palaminos I*, *supra*, F054625.)

8.

We also held there was substantial evidence to support defendant's convictions for five counts of second degree implied malice murder.

> "Ample evidence established defendant was put on notice that his driving was dangerous to the lives of those around him and he continued to drive despite his awareness of the risk he posed. He drank alcohol and ingested methamphetamine that morning. He previously had been arrested for driving under the influence. He drove a stolen truck attached to a piece of heavy equipment, the handling and braking of which would naturally be different than an ordinary vehicle. He not only had no special license to operate the vehicle, he had no driver's license at all. He was in fact unable to control the rig, to the point that he could not keep it in the correct lane or even on the road. He nearly collided head-on with an oncoming driver, who had to take evasive action to prevent a potentially fatal collision. Defendant's fearful expression as he drove indicated he was aware of his inability to drive the rig safely. But, instead of slowing down or stopping the rig, he proceeded at a high speed, knowing he was unable to control the rig. He finally attempted to brake, but it was too late. He ran the stop sign and killed an entire family. We have no reservations regarding the quantum of evidence supporting the five murder convictions in this case." (*Palaminos I*, *supra*, F054625.)

### SENATE BILL 1437's AMENDMENTS

Senate Bill 1437 went into effect on January 1, 2019, and "amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Harden* (2022) 81 Cal.App.5th 45, 50–51 (*Harden*).)

Senate Bill 1437 "also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Harden*, *supra*, 81 Cal.App.5th at pp. 50–51.)

9.

Senate Bill 1437 "added former section 1170.95, which created a process for those convicted of murder under now obsolete accomplice liability theories to seek [vacatur changes and] resentencing. Effective January 1, 2022, the Legislature revised section 1170.95 through the passage of [Senate Bill 775]. Petitioners who were convicted of attempted murder and manslaughter under now obsolete theories may also seek relief." (*People v. Ramos* (2025) 112 Cal.App.5th 174, 183; *People v. Reyes* (2023) 97 Cal.App.5th 292, 295.)

Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no change in text. (*People v. Saavedra* (2023) 96 Cal.App.5th 444, 446, fn. 1.)

As discussed below, Senate Bill 1437's amendments "maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged." (*Clements*, *supra*, 75 Cal.App.5th at p. 298.)

Since the effective date of Senate Bill 1437, defendant has filed three petitions for resentencing, all of which have been denied for failing to state a prima facie case.

**DEFENDANT'S FIRST PETITION FOR RESENTENCING**

On June 24, 2019, defendant filed his first petition for resentencing under former section 1170.95, and checked boxes on a preprinted form stating he was eligible for resentencing because he was convicted of murder based on either the felony-murder rule or the natural and probable consequences doctrine. He requested appointment of counsel.

On July 30, 2019, the People filed a motion for the trial court to dismiss defendant's petition because he was the actual killer and ineligible for relief under Senate Bill 1437.

On September 19, 2019, the trial court appointed counsel for defendant.

**The Trial Court's Denial of the First Petition**

On September 26, 2019, the trial court held a hearing on defendant's petition. Defendant was not present but represented by counsel.

Defendant's counsel stated he was familiar with the case because he represented defendant at his bench trial. Counsel stated defendant was convicted of five counts of second degree murder based on implied malice, and he did not believe defendant was eligible for resentencing.

The trial court denied defendant's petition because an actual killer was ineligible for resentencing under Senate Bill 1437's statutory amendments.

On October 1, 2019, the trial court filed an order stating "[t]he petition is summarily denied because [defendant] is not entitled to relief as a matter of law. [Defendant] was convicted of murder, but the court's file reflects that [defendant] was the actual killer and not convicted under a theory of felony-murder or a theory of natural and probable consequences. Further, the appellate opinion affirming [defendant's] conviction and sentence reflects [defendant] was the actual killer and was convicted of murder on a theory of being the direct perpetrator of murder."

## *Wende* Appeal and Defendant's Letter Brief

On appeal from the denial of defendant's first petition, appellate counsel filed a *Wende* brief. This court sent a letter to defendant inviting him to file a letter brief.

On March 16, 2020, defendant filed with this court a handwritten and paginated letter brief (2020 Letter Brief) that consisted of 44 pages of factual and legal arguments. On page 44, in different handwriting, defendant signed the document and dated it March 8, 2020. Following page 44, there were three additional pages: a verification, a declaration by the prisoner who prepared the letter brief, and a proof of service.

In the 2020 Letter Brief, defendant asserted the trial court did not correctly instruct "the jury," and argued that as a result of Senate Bill 1437's amendments, defendant was improperly "convicted of murder based upon implied malice imputed to him from the criminal act of driving while intoxicated.… In [defendant's] case, he should now be resentenced on his murder convictions to vehicular manslaughter …."

11.

Defendant's letter brief also alleged appointed defense counsel was prejudicially ineffective because he allowed the trial court to conduct the hearing in defendant's absence, counsel refused to raise defendant's arguments about imputed and implied malice, and counsel conceded defendant was ineligible for relief.

**This Court's Opinion**

On March 5, 2021, this court filed the nonpublished opinion in *Palaminos II* and affirmed the trial court's denial of defendant's petition for resentencing. We recited the complete factual statement from this court's opinion that affirmed the judgment on direct appeal. We reviewed the issues raised in defendant's letter brief, addressed the differences between implied malice and imputed malice, and rejected defendant's claims:

> "Second degree murder based on implied malice was not eliminated by Senate Bill 1437, which 'removed the natural and probable consequences doctrine as a basis for a murder conviction only insofar as it applied to aider and abettor liability.' [Citation.] The natural and probable consequences doctrine of aiding and abetting and the definition of implied malice are sometimes confused because both contain similar language regarding a 'natural consequence,' but they are 'distinctly different concepts.' " (*Palaminos II*, *supra*, F080169.)

We held the record demonstrated the five victims died as the result of the injuries that resulted "when defendant drove the rig while impaired by alcohol. Defendant was not alleged to have aided and abetted another and was not convicted under either a felony murder or a natural and probable consequences theory. He alone caused the fatal collision that killed an entire family and section 1170.95 provides him no [further] relief. Further, defendant's claims that the trial court relied on disputed facts and applied the incorrect standard to consideration of his petition are unmeritorious." (*Palaminos II*, *supra*, F080169.)

We also rejected defendant's complaints about not being present at the hearing on his petition, and counsel's concession that he was ineligible for relief. We held that even assuming error, both incidents were harmless under both *Chapman v. California* (1967)

386 U.S. 24 and *People v. Watson* (1956) 46 Cal.2d 818 because defendant's presence at the hearing, and the absence of a concession, "would have made no difference." (*Palaminos II*, *supra*, F080169.)

### DEFENDANT'S SECOND PETITION FOR RESENTENCING

On January 10, 2022, defendant filed his second petition for resentencing, shortly after the effective date of the amendments to former section 1170.95 enacted by Senate Bill 775. He used a form petition and checked boxes stating that he was eligible because he was convicted of murder under the felony-murder rule, the natural and probable consequences doctrine, or other theory in which malice is imputed to a person solely on that person's participation in a crime, and requested appointment of counsel. On February 3, 2022, the trial court appointed counsel.

The People filed an opposition and argued defendant was ineligible for resentencing after Senate Bill 1437's amendments to sections 188 and 189 because he was charged with, and admitted at trial, driving the stolen vehicle that caused the fatal crash. The People's opposition further stated defendant's prior petition had already been denied because he was the actual killer, and the recent amendments to former section 1170.95 did not require a different result.

### The Trial Court's Denial of the Petition

On May 2, 2022, the trial court conducted a hearing on the petition. Defendant was present with counsel. The court found there had been no changes in circumstances or the law to consider defendant's second petition, and that the denial of defendant's first petition was still valid.

### *Wende* Appeal and Defendant's Letter Brief

On appeal from the trial court's denial of defendant's second petition, appellate counsel filed a *Wende* brief.

On January 9, 2023, in response to this court's invitation, defendant filed a four-page typed letter brief. Defendant argued *People v. Strong* (2022) 13 Cal.5th 698

required remand of his case. Based on *Strong*, defendant argued the trial court did not determine beyond a reasonable doubt that he had the degree of culpability now required for murder under former section 1170.95, he lacked the intent to kill because he was intoxicated, he could not be found guilty of murder after Senate Bill 1437's amendments, and the court should have conducted a hearing and permitted the introduction of new evidence.

**This Court's Opinion**

On February 21, 2023, we filed the nonpublished opinion in *Palaminos III* and affirmed the trial court's denial of defendant's second petition. We again recited the entirety of the factual statement from our opinion that affirmed the judgment, along with our conclusions that there was substantial evidence of implied malice to support his five convictions for murder. (*Palaminos III*, *supra*, F084305.)

We reviewed defendant's arguments in his letter brief and held:

> "Here, defendant was not prejudiced by any failure in the court's procedure because, as in [*Delgadillo*, *supra*,] 14 Cal.5th at p. 232, the record shows defendant was convicted of second degree murder under an actual implied malice theory (§ 187, subd. (a)) and gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)). [Citation.] Defendant was not an aider and abettor or a major participant; he was the *sole perpetrator* of the crimes and the actual killer. Further, defendant was not alleged to have aided and abetted another and was not convicted under either a felony murder or a natural and probable consequences theory, and malice was not imputed to him. He alone caused the fatal collision that killed an entire family. He is therefore ineligible for relief under section 1172.6 as a matter of law." (*Palaminos III*, *supra*, F084305.)

We also rejected defendant's claim that he was entitled to issuance of an order to show cause and an evidentiary hearing under *Strong*. "Prior to *Strong*, the Courts of Appeal were split on the question of whether a special circumstance finding entered prior to *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 renders a petitioner ineligible for section 1172.6 resentencing relief as a matter of law.

14.

[In *Strong*, our] Supreme Court recently resolved this split and made clear that when a petitioner's case 'was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him from making out a prima facie case for resentencing under section 1172.6.' " (*Palaminos III*, *supra*, F084305.) We concluded *Strong* did "not change his situation." (*Palaminos III*, *supra*, F084305.)

## <u>DEFENDANT'S THIRD PETITION FOR RESENTENCING</u>

The current appeal is based on defendant's filing of his third petition for resentencing on October 30, 2024. Defendant checked boxes on an updated preprinted form that alleged he was eligible for resentencing under section 1172.6 because he was convicted of murder under either the felony-murder rule and/or the natural and probable consequences doctrine, his convictions were now invalid after Senate Bill 1437's amendments to sections 188 and 189, and requested appointment of counsel.

In support of his third petition, defendant attached individual pages that appear to be from the reporter's transcript of his bench trial, out of order and without context. In these pages, he underlined certain words and phrases, such as the prosecutor's rebuttal closing argument that defendant "intentionally committed an act, the natural consequences" of which were dangerous to human life; and the trial court's verdict that he was guilty of second degree murder "based on the theory of implied malice" and he did numerous acts "the natural consequences of which" are dangerous to human life.

On November 14, 2024, the trial court appointed counsel for defendant.

On December 2, 2024, the trial court ordered the prosecutor to prepare a transportation order to obtain defendant's presence at the next hearing. On January 17, 2025, the court stated that defendant refused to appear in person and agreed that he could appear by videoconference.

## <u>The Trial Court's Denial of the Petition</u>

On February 28, 2025, the trial court held the hearing on defendant's third petition. Defendant appeared by videoconference and defense counsel was present in the courtroom.

The trial court asked defense counsel if there was "any path of relief in this case." Counsel said he discussed the matter with the district attorney, he received notes about the case from a prior defense attorney, and submitted the matter.

The trial court stated that its tentative ruling was to deny defendant's petition for failing to state a prima facie case because it did not appear he was eligible for relief. "He was the actual killer who stole the tractor trailer and collided with a vehicle that resulted in the deaths of five individuals."

The prosecutor agreed, and defense counsel submitted the matter.

The trial court stated defendant's petition was denied because he could still be convicted for the murder of the five victims even after the amendments to sections 188 and 189. Defendant personally addressed the court and asked why defense counsel was not raising arguments that he requested. The court replied: "You were the person driving the vehicle that collided with another vehicle and five people in that other vehicle were killed. Because the record indicates that you were the actual killer, you are not entitled to relief under … [s]ection 1172.6."

## DEFENDANT'S CURRENT APPEAL

In this appeal from the trial court's denial of defendant's third petition for resentencing, appellate counsel filed a brief with this court pursuant to *Delgadillo* and *Wende*. The brief also included counsel's declaration that defendant was advised he could file his own brief with this court. On December 11, 2025, this court advised defendant pursuant to *Delgadillo*, his appeal would be dismissed if he failed to file a supplemental letter brief.

On January 8, 2026, defendant filed with this court a handwritten letter brief (2026 Letter Brief) that consisted of pages two through 44 of his 2020 Letter Brief—the same

16.

handwritten letter brief that he filed with this court in his appeal from the trial court's denial of his first petition for resentencing.

In filing this 2026 Letter Brief, defendant replaced the original first page of the 2020 Letter Brief with two new pages that were in different handwriting. In these two new pages, defendant states the following:

> "[Defendant] requests that this court take judicial notice of the underlying case. The alleged 'prior' drunk driving case and Judge Couzens' [Senate Bill] 1437 memorandum. [¶] And this case of *People v. Pacheco* (2022) 76 Cal.App.5th 118. In *Pacheco* the defendant was is [*sic*] was the actual killer. [¶] The 'prior' drunk driving case is the basis for the DAs [*sic*] '*Watson*' murder theory and conviction."

On page 44 of the 2020 Letter Brief, defendant signed the document and dated it March 8, 2020. The 2026 Letter Brief used the same page 44 from the 2020 Letter Brief, but the original date was crossed out, and defendant dated his signature as December 12, 2025. He also replaced the three pages from the end of the 2020 Letter Brief with an identically-worded verification, declaration, and proof of service, in the same handwriting as the two new pages at the beginning of the 2026 Letter Brief.

Other than the issues stated in the two new pages, defendant did not make any additional changes to the 2020 Letter Brief or raise any other new arguments.

## DISCUSSION

### I.  Defendant's Third Petition Failed to State a Prima Facie Case.

The trial court correctly denied defendant's third petition for resentencing for failing to state a prima facie case because the record of conviction conclusively shows he was charged and convicted of five counts of second degree murder as the actual killer who acted with implied malice.

### A.  The Record of Conviction After a Bench Trial

After a defendant files a section 1172.6 petition, the trial court must appoint counsel and provide for the parties to submit briefing, and then "hold a hearing to

17.

determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)

In making the prima facie determination, the trial court "may look at the record of conviction … to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court cannot not engage in factfinding or weigh credibility when making the prima facie determination. (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 (*Lovejoy*).) Although the court may consider the " 'procedural history' " in a prior appellate opinion, it cannot rely on the opinion's factual summary to make the prima facie finding. (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238.)

" 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Patton* (2025) 17 Cal.5th 549, 563.) Where the record of conviction conclusively establishes the petitioner was the actual killer, the petition fails to state a prima facie case for relief and the petitioner is ineligible for resentencing as a matter of law. (*Delgadillo*, *supra*, 14 Cal.5th at p. 233; *People v. Garcia* (2022) 82 Cal.App.5th 956, 973.)

In a jury trial, the record of conviction consists of the charging documents, jury instructions, and verdict forms. (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 865; *Harden*, *supra*, 81 Cal.App.5th at p. 56.)

If a defendant was convicted in a bench trial, the record of conviction for purposes of the prima facie determination includes "a trial court's remarks at the conclusion of a bench trial support the prima facie denial of a … section 1172.6 petition." (*People v. Anaya* (2025) 117 Cal.App.5th 615, 618 (*Anaya*) [rev. den., Mar. 11, 2026].)

In *Anaya*, defendant was convicted after a bench trial of attempted murder and other offenses. (*Anaya*, *supra*, 117 Cal.App.5th at p. 618.) At the conclusion of the

bench trial, "neither party invoked the natural and probable consequences doctrine. The prosecutor argued [the defendant] stabbed [the victim] with the intent to kill. Defense counsel acknowledged there was 'ample evidence' [the defendant] stabbed [the victim] multiple times. Counsel argued lack of intent to kill and self-defense." (*Id*. at p. 621.) In finding the defendant guilty of attempted murder after the bench trial, the trial court found the defendant " 'inflicted' " stab wounds on the victims, and that " 'based on the totality of the facts, I do think that there was an intent to kill.' " (*Ibid*.)

In 2023, the defendant in *Anaya* filed a section 1172.6 petition for resentencing on his attempted murder conviction. At the prima facie hearing, the trial court acknowledged that it could not make factual findings but stated: " 'I did preside over the court trial, however. And in this case, [the] defendant was the only charged defendant in this case. He was found guilty of counts 1, 3, 4, and 5. Count 1 being the attempted murder, along with personal infliction of great bodily injury pursuant to [section] 12022.7. Based on all of that, the court does not find a prima facie case has been established and the petition is denied.' " (*Anaya*, *supra*, 117 Cal.App.5th at p. 619.)

On appeal in *Anaya*, the defendant argued the trial court improperly made factual findings from the bench trial to make the prima facie determination. *Anaya* rejected the defendant's argument, noted the trial transcript was part of the record of conviction, and held the record "conclusively establishes" that the defendant was ineligible for section 1172.6 relief and his petition was correctly denied for failing to state a prima facie case. (*Anaya*, *supra*, 117 Cal.App.5th at pp. 620, 621; *People v. Lopez* (2023) 88 Cal.App.5th 566, 572, fn. 5.) "Ordinarily, we 'look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations' in a section 1172.6 petition. [Citation.] This case is more straightforward because the court explained its attempted murder finding." (*Anaya*, at pp. 620–621.)

*Anaya* reviewed the record of the bench trial, found the parties' closing arguments framed the court's findings of guilt and "plainly rejected" the defendant's claims of self-defense and lack of intent to kill, and the court found the defendant was guilty of attempted murder because he was the actual perpetrator who stabbed the victim and acted with the intent to kill. (*Anaya*, *supra*, 117 Cal.App.5th at p. 621.) Based on the record of conviction from the bench trial, *Anaya* concluded that the defendant was convicted of attempted murder "as the direct perpetrator who acted with intent to kill, not based on the natural and probable consequences doctrine or any other theory of vicarious liability. His case presents the archetypal ' "clearly meritless petition[]" ' the prima facie stage properly 'screen[s] out.' " (*Ibid*.)

*Anaya* held the trial court at the defendant's bench trial had already "evaluated credibility and weighed evidence," and "[r]eliance on the trial court's remarks, which elucidate its underlying factual determinations, does not itself constitute factfacting" to make the prima facie determination. (*Anaya*, *supra*, 117 Cal.App.5th at p. 621.)

*Anaya* distinguished previous authorities which held that a trial court is not required to provide a statement of decision after a criminal bench trial and " 'that any explanation of his or her decision a trial judge provides is not part of the record on appeal.' [Citations.] Rather than defining the scope of the record of conviction in a section 1172.6 case, these authorities are better understood as applying the principle that ' "where a judge's statements as a whole disclose a correct concept of the law and its application, no secondary remarks should be deemed to have impeached his determination." ' [Citation.] This principle has no application in the section 1172.6 prima facie context, where the court evaluating the petition is not impeaching the trial court's determination." (*Anaya*, *supra*, 117 Cal.App.5th at p. 621.)

**B. Analysis**

Defendant waived a jury trial and was convicted of second degree murder after a bench trial. As we have explained in the three prior opinions in defendant's case,

"[s]econd degree murder is defined as requiring either express or implied malice. [Citations.] Express malice is intent to kill." (*People v. Carr* (2023) 90 Cal.App.5th 136, 141 (*Carr*).) "Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger." (*People v. Elmore* (2014) 59 Cal.4th 121, 133.)

As in *Anaya*, the parties' closing arguments at the bench trial framed the court's findings and verdicts. Both parties agreed defendant was driving the stolen truck that crashed into the victims' vehicle but disagreed as to defendant's level of culpability. The prosecutor argued defendant acted with implied malice, he knew his conduct was dangerous, and he deliberately acted with conscious disregard for human life. Defense counsel stated defendant was not making excuses "to avoid responsibility," but he was only guilty of gross criminal negligence instead of second degree murder.

In returning the verdicts, the court at the bench trial rejected defense counsel's arguments and found defendant was guilty of five counts of second degree murder because he was driving the stolen truck and the trailer with the John Deere crawler, he had consumed drugs and alcohol, he drove at a high rate of speed, went through the stop sign, and caused the deaths of the five victims in the Toyota. Defendant's acts "are such that they involve a conscious disregard for life irrespective of those things. It's not that much different than somebody who was fleeing the scene of a crime. It's not that much different than somebody that's involved in a speed contest where they consciously disregard it."

As in *Anaya*, the record of conviction from defendant's bench trial shows he was tried and convicted of second degree murder as the actual killer who acted with implied malice. (*Delgadillo*, *supra*, 14 Cal.5th at p. 233.) Defendant could not make a prima facie case for resentencing under former section 1170.95, and still cannot do so after Senate Bill 775's amendments to section 1172.6.

## II. Implied Malice and Imputed Malice

21.

Successive petitions for resentencing under section 1172.6 are not barred when they are based on new authority or changes in the law. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 950–951.) In this appeal, however, nearly the entirety of defendant's 2026 Letter Brief is identical to his 2020 Letter Brief on appeal. This court addressed and rejected defendant's arguments in this same letter brief in *Palaminos II*, about the differences between imputed malice and implied malice, and we affirmed the trial court's denial of defendant's first petition for resentencing.

Defendant could not make a prima facie case for resentencing under former section 1170.95, and still cannot do so after Senate Bill 775's amendments to section 1172.6, because the record of conviction "makes clear that [defendant] was the actual killer and the only participant in the killing," and he was not convicted under an invalid theory of imputed malice. (*Delgadillo*, *supra*, 14 Cal.5th at p. 233.)

Defendant's repeated insistence that he is eligible for resentencing, even though he was the actual killer, is based on "an artificial concoction that takes the words 'natural consequences' and/or 'natural and probable consequences' out of their proper legal contexts and dumps them all together into a confused semantic stew." (*Carr*, *supra*, 90 Cal.App.5th at p. 139.) It is settled that imputed malice and implied malice are not the same doctrines, and implied malice murder has not been abrogated by the amendments enacted by Senate Bills 1437 and 775. (*Clements*, *supra*, 75 Cal.App.5th at p. 298; *People v. Schell* (2022) 84 Cal.App.5th 437, 443–444.)

"Implied malice is not imputed malice. It requires that the perpetrator actually and personally harbor malice." (*Carr*, *supra*, 90 Cal.App.5th at p. 139.) "The name of the doctrine is confusing, since implied malice also incorporates the idea of 'natural and probable consequences,' but the two concepts are distinct. Whereas implied malice is based on 'the "natural and probable consequences" of a defendant's *own* act,' " the natural and probable consequences doctrine was a theory of vicarious liability involving a principal and an aider and abettor. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 231.)

22.

"To the extent [the defendant] means to argue that the natural and probable consequences doctrine or any other theory of imputed malice could apply to a sole perpetrator, that argument fails, as these abrogated theories necessarily require a second participant." (*People v. Love* (2025) 107 Cal.App.5th 1280, 1288.)  We need not further address this issue.

### III.  Defendant's New Issues

We turn to the issues raised in defendant's 2026 Letter Brief, in the two pages that he attached to the beginning of the pages from the 2020 Letter Brief.

First, defendant requests we take judicial notice of "the underlying case," and refers to the "alleged 'prior' drunk driving case," which was supposedly "the basis for the [prosecutor's] '*Watson*' murder theory and conviction."

Defendant was not charged and convicted of driving under the influence.  As explained above, the trial court found defendant guilty of five counts of second degree implied malice murder, acknowledged the prosecutor's closing argument that the murder charges were not solely based on *Watson*, and agreed that "irrespectively [of] whether or not [defendant] was driving under the influence, his acts are such that they involve a conscious disregard for life irrespective of those things.  It's not that much different than somebody who was fleeing the scene of a crime.  It's not that much different than somebody that's involved in a speed contest where they consciously disregard it."

In any event, even if the prosecutor's sole theory of implied malice was based on *Watson*, it is settled that a conviction for *Watson* implied malice murder is still valid after the amendments enacted by Senate Bills 1437 and 775.  (*Carr*, *supra*, 90 Cal.App.5th at p. 139.)

Next, defendant requests we take judicial notice of "Judge Couzens' SB 1437 memorandum."  Defendant may be referring to a document authored by Superior Court Judge Richard Couzens (retired), entitled "Accomplice Liability for Murder, Penal Code §§ 188, 189, and 1172.6 ([Sen. Bill 1437 and Sen. Bill 775]) (May 2024) [(Couzens)]."

(Unnecessary capitalization omitted.)  This review of section 1172.6 legal authorities does not assist defendant since it states that an actual killer is not eligible for resentencing (Couzens, *supra*, at pp. 5, 12–13, 48, 80), implied malice is still a valid theory of murder after the amendments (*id*. at pp. 30–31, 52), and a murder conviction based on *Watson* implied malice remains a valid theory (*id*. at pp. 62–63).

Defendant also cites to *People v. Pacheco*, *supra*, 76 Cal.App.5th 118, and states the defendant in that case was "the actual killer."  *Pacheco* does not support defendant's arguments.  The defendant in *Pacheco* was convicted after a jury trial of first degree murder as an aider and abettor, with a gang special circumstance, and attempted murder. The trial court summarily denied the defendant's section 1172.6 petition for failing to state a prima facie case.  *Pacheco* was remanded for an evidentiary hearing because the jury at the defendant's trial was instructed on the natural and probable consequences doctrine as a theory for murder.  (*Pacheco*, at p. 122.)

In contrast to *Pacheco*, defendant in this case was tried and convicted in a bench trial.  In returning the verdicts, the trial court did not cite, consult, or quote any jury instructions, much less those for the natural and probable consequences doctrine, and the court convicted him of five counts of second degree murder by finding he was driving the vehicle that caused the fatal collision and acted with implied malice.

## DISPOSITION

The trial court's order of February 28, 2025, denying defendant's third petition for resentencing under section 1172.6, is affirmed.

24.